1

2

3

4

5 **UNITED STATES DISTRICT COURT**

6 **EASTERN DISTRICT OF WASHINGTON**

7 | JONAH M. FIGUEROA, | No. 2:15-cv-00139-MKD
| | |
8 |             Plaintiff, | ORDER DENYING PLAINTIFF'S
| | MOTION FOR SUMMARY
9 |       vs. | JUDGMENT AND GRANTING
| | DEFENDANT'S MOTION FOR
10 | CAROLYN W. COLVIN, | SUMMARY JUDGMENT
| |
11 | Acting Commissioner of Social Security, | ECF Nos. 14, 19
| |
12 |             Defendant. |

13        BEFORE THE COURT are the parties' cross-motions for summary

14 judgment.  ECF Nos. 14, 19.  The parties consented to proceed before a Magistrate

15 Judge.  ECF No. 7.  The Court, having reviewed the administrative record and the

16 parties' briefing, is fully informed.  For the reasons discussed below, the Court

17 denies Plaintiff's motion (ECF No. 14) and grants Defendant's motion (ECF No.

18 19).

19

20

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."

*Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

1    gainful activity," the Commissioner must find that the claimant is not disabled.  20

2    C.F.R. § 416.920(b).

3            If the claimant is not engaged in substantial gainful activity, the analysis

4    proceeds to step two.  At this step, the Commissioner considers the severity of the

5    claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

6    "any impairment or combination of impairments which significantly limits [his or

7    her] physical or mental ability to do basic work activities," the analysis proceeds to

8    step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

9    this severity threshold, however, the Commissioner must find that the claimant is

10   not disabled.  *Id.*

11           At step three, the Commissioner compares the claimant's impairment to

12   severe impairments recognized by the Commissioner to be so severe as to preclude

13   a person from engaging in substantial gainful activity.  20 C.F.R.

14   § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

15   enumerated impairments, the Commissioner must find the claimant disabled and

16   award benefits.  20 C.F.R. § 416.920(d).

17           If the severity of the claimant's impairment does not meet or exceed the

18   severity of the enumerated impairments, the Commissioner must pause to assess

19   the claimant's "residual functional capacity."  Residual functional capacity (RFC),

20   defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R.

§ 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience. *Id.* If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §

416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis

concludes with a finding that the claimant is disabled and is therefore entitled to

benefits. *Id.*

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title XVI supplemental security income benefits on October 13, 2010, alleging a disability onset date of October 1, 2007. Tr. 175-183. The application was denied initially, Tr. 104-107, and on reconsideration, Tr. 84-96. Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on December 17, 2013. Tr. 31-57. On January 23, 2014, the ALJ denied Plaintiff's claim. Tr. 11-30.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 30, 2010. Tr. 16. At step two, the ALJ found Plaintiff has the following severe impairments: asthma and anxiety. Tr. 16. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 20. The ALJ then concluded that Plaintiff has the RFC to perform light work, with the following non-exertional limitations:

> He can lift and carry 20 pounds occasionally and 10 pounds frequently. There is no limit on standing but he should avoid walking more than 4 blocks at a time. He should avoid climbing ladders, ropes, and scaffolds, but is capable of occasionally climbing ramps or stairs, no more than two flights at a time. He should avoid concentrated exposure or odors, dust, gases, fumes, perfumes, and environmental irritants. He should avoid extreme

temperatures and humidity. He is capable of no more than superficial contact with the general public and with coworkers.

Tr. 21.  At step four, the ALJ found that Plaintiff is unable to perform relevant past work.  Tr. 25.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience and RFC, there are jobs in significant numbers in the national economy that Plaintiff could perform, such as bottle labeler or production assembler.  Tr. 25-26.  On that basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social Security Act.  Tr. 26.

On April 3, 2015, the Appeals Council denied review, making the Commissioner's decision final for purposes of judicial review.  *See* 42 U.S.C. 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 14.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly discredited Plaintiff's symptom claims; and

2. Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 14 at 10.

# DISCUSSION

## A. Adverse Credibility Finding

First, Plaintiff faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting his symptom claims. ECF No. 14 at 11-16.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptom alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints."  *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002)("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition.  *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely credible."  Tr. 22.

### 1. Inconsistent Statements

The ALJ found that Plaintiff's credibility was undermined by his inconsistent statements regarding the reason he stopped working and the severity

of his impairments.  Tr. 22.  In evaluating credibility, the ALJ may consider

inconsistencies in Plaintiff's testimony or between his testimony and his conduct.

*Thomas*, 278 F.3d at 958-59; *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)

(in making a credibility evaluation, the ALJ may rely on ordinary techniques of

credibility evaluation).

For example, the ALJ observed that Plaintiff testified he stopped working

"due to his own health problems," Tr. 41, but the record indicated he previously

told Dr. McRae in June 2008 that "he stopped working because of his mother's

health problems and made no mention of his own."  Tr. 22 (referring to Tr. 251).

The ALJ further noted that Plaintiff "generally portrayed himself as

extremely limited with regard to his asthma, with multiple uses of medications

every day and multiple emergency room visits."  Tr. 23.  The ALJ identified

inconsistencies in the record regarding these allegations.  Specifically, the ALJ

observed that the Plaintiff "reported using his nebulizer all day long," Tr. 23 (citing

Tr. 283).  However, the ALJ noted that "just two months earlier…[Plaintiff]

reported only three breathing treatments per day."  Tr. 23 (citing Tr. 311).

Similarly, Plaintiff inconsistently reported his emergency room visits to treat his

asthma.  Tr. 23.  For example, in July 2010, Plaintiff reported two emergency room

visits in the past six months, but in fact he had not been to the emergency room

since 2001.  Tr. 23 (citing Tr. 260, 280).  It appears as though Plaintiff visited the

emergency room on one occasion, in December 2013, which-as Defendant notes-was 16 days before his hearing.  Tr. 23 (citing Tr. 364-374); ECF No. 19 at 6.  Plaintiff's inconsistent statements were a clear and convincing reason to discredit his testimony.

### 2. *Reason for Stopping Work*

The ALJ noted that Plaintiff stopped working for reasons that were unrelated to his physical impairments.  Tr. 22.  When considering a claimant's contention that he cannot work because of his impairments, it is appropriate to consider whether the claimant has not worked for reasons unrelated to his alleged disability. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (the fact that the claimant left his job because he was laid off, rather than because he was injured, was a clear and convincing reason to find him not credible); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (the ALJ properly discounted claimant's credibility based, in part, on the fact that the claimant's reason for stopping work was not his disability).  Here, as noted *supra*, the ALJ observed Plaintiff told Dr. McRae during a psychological assessment that he stopped working because of his mother's health problems and made no mention of his own health problems.  Tr. 22 (referring to Tr. 251).  This was a clear and convincing reason to discredit Plaintiff's testimony.

### 3.  Evidence of Exaggeration

The ALJ discounted the Plaintiff's testimony because at least two physicians suggested the Plaintiff exaggerated his symptoms.  Tr. 23.  The tendency to exaggerate is a permissible reason for discounting a Plaintiff's credibility.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (the ALJ appropriately considered Plaintiff's tendency to exaggerate when assessing Plaintiff's credibility, which was shown in a doctor's observation that Plaintiff was uncooperative during cognitive testing but was "much better" when giving reasons for being unable to work.); *see also Thomas,* 278 F.3d at 959 (An ALJ may properly rely on a claimant's efforts to impede accurate testing of a claimant's limitations when finding a claimant less than credible).

The ALJ noted that examining psychologist Dr. Arnold reported that Plaintiff's "PAI [personality assessment inventory] was deemed questionably valid, as there were subtle suggestions he attempted to portray himself in a negative or pathological manner in a particular areas."  Tr. 23 (citing Tr. 314). And, "Dr. Arnold noted a dramatic presentation with exaggerated expression and over-reaction, vague responses, and unsupported symptomatology, summarizing that the claimant gave the appearance that he was attempting negative impression management, for which Dr. Arnold recommended TOMM to rule out cognitive malingering."  Tr. 23 (citing Tr. 321, 323).  The ALJ noted that another medical

provider, Dr. Chandler had identified inconsistent statements made by Plaintiff during an evaluation, which the ALJ found further called into question his credibility.  Tr. 23 (citing Tr. 295-296).

Because an ALJ may account for a Plaintiff's exaggeration of symptoms and interference during an evaluation in assessing credibility, this was specific, clear and convicting reason to discredit his testimony.

### 4. Improvement with Medication

The ALJ found the Plaintiff's claims lacked credibility because the Plaintiff improved with medication.  Tr. 23.  An ALJ may rely on examples of "broader development" of improvement when finding a claimant's testimony not credible. *Garrison*, 759 F.3d at 1017-18.  Moreover, the effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms, 20 C.F.R. § 404.1529(c)(3), 416.929(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006) (Conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti*, 533 F.3d at 1040  (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

The ALJ observed that "treatment records consistently demonstrate improvement on medications alone."  Tr. 23.  The ALJ noted that "in May 2011,

1    medications definitely helped; in January 2010, doing okay; in May 2012, well

2    controlled, in March 2013, mentally stable, and … in October 2013, stable."  Tr.

3    23 (citing Tr. 319-334).

4         Because an ALJ may find impairments that can be controlled with

5    medication are not disabling, the ALJ did not err when he found Plaintiff's

6    symptom complaints less than credible.

7         *5.  Noncompliance with Recommended Treatment*

8         The ALJ found that Plaintiff's was not compliant with his treating

9    physician's recommended treatment.  Tr. 23.  Despite improvement with

10   medication, the ALJ observed that the Plaintiff was "not compliant with treatment

11   recommendations." Tr. 23.

12        Plaintiff's failure to follow a prescribed course of treatment is a permissible

13   reason to discredit his testimony.  *See Molina*, 674 F.3d at 1113 ("We have long

14   held that, in assessing a claimant's credibility, the ALJ may properly rely on

15   unexplained or inadequately explained failure ... to follow a prescribed course of

16   treatment.").  The ALJ found that

17            Despite being told not use his inhaler up to 10 times a day by Nurse
              Vecchio… as this was contributing to his anxiety, records indicate he
18            continued to report this level of use and Dr. Green described him as non-
              compliant with asthma controlling medications … Nurse Vecchio likewise
19            reported… that he was very adverse to using inhaled corticosteroids, had
              missed his first appointment with the pulmonologist, and had not sought
20            help from a mental health provider for his anxiety despite being encouraged
              to do so. Indeed, in a public assistance benefits evaluation in November

> 2012 … he admitted he stopped taking the Klonopin and his anxiety had
> worsened as a result and … in September 2012, he admitted he did not like
> to use medications despite stating they were helpful.

Tr. 23 (citing Tr. 256, 295, 347, 359, 358, 260-290.)

Plaintiff contends he was noncompliant with certain treatment recommendations because he could not afford them. ECF No. 14 at 13. A claimant's inability to afford treatment should not cast doubt on his credibility. *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). However, the record indicates that Plaintiff's non-compliance with his treatment plan was not the result of lack of access. Here, the ALJ acknowledged that Plaintiff was without insurance for a period and specifically noted issues of noncompliance not related to lack of insurance. Tr. 23. For example, Plaintiff was over-using his prescribed albuterol inhaler. Tr. 23, 256, 295, 347, 359. The Plaintiff missed an appointment with a pulmonologist. Tr. 23, 283. And, he refused to see a mental health provider, despite a referral from Nurse Vecchio to a low-cost option. Tr. 23, 284. As the ALJ noted, the Plaintiff admitted that he did not like to take medication, despite its effectiveness. Tr. 23, 253. In his testimony, the Plaintiff said of medication "I don't like the way they make me feel, so I choose to not take them." Tr. 44. Plaintiff's behavior is not consistent with being unable to comply with his treatment plan due to financial constraints. Instead, the ALJ reasonably interpreted the behavior as indicative of voluntary noncompliance,

1  which was a permissible reason for the ALJ to discount the Plaintiff's reported

2  symptoms.

3      *6. Activities of Daily Living*

4      Finally, the ALJ found that Plaintiff's daily activities were inconsistent with

5  the severe limitations Plaintiff alleged and indicated the ability to persist at simple

6  tasks and tolerate routine social interactions.  Tr. 23.  A claimant's reported daily

7  activities can form the basis for an adverse credibility determination if they consist

8  of activities that contradict the claimant's "other testimony" or if those activities

9  are transferable to a work setting.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.

10 2007); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities

11 may be grounds for an adverse credibility finding "if a claimant is able to spend a

12 substantial part of his day engaged in pursuits involving the performance of

13 physical functions that are transferable to a work setting.").  "While a claimant

14 need not vegetate in a dark room in order to be eligible for benefits, the ALJ may

15 discredit a claimant's testimony when the claimant reports participation in

16 everyday activities indicating capacities that are transferable to a work setting" or

17 when activities "contradict claims of a totally debilitating impairment."  *Molina*,

18 674 F.3d at 1112-13 (internal quotation marks and citations omitted).

19     The ALJ observed that the Plaintiff's "reported activities of daily living are

20 independent, and include a variety of household chores, cooking, shopping,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 16

attending school at one point and doing homework, and visiting with friends and family, despite his allegations … that he is unable to prepare meals or shop independently." Tr. 23. These activities are inconsistent with Plaintiff's complaints that he is unable to perform a basic job because it will overexert him. Tr. 43. Basic cooking, tidying, shopping and socializing demonstrate that Plaintiff is capable of some activity throughout the day without becoming overexerted. Plaintiff was working on his GED. Tr. 43. This is inconsistent with his allegation that he doesn't work, in part, because he has a "comprehension problem." Tr. 45. The evidence of Plaintiff's daily activities in this case may be interpreted more favorably to the Plaintiff, however, such evidence is susceptible to more than one rational interpretation, and therefore the ALJ's conclusion must be upheld. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Here, Plaintiff's daily activities were reasonably considered by the ALJ to be inconsistent with the Plaintiff's allegations of disabling functional limitations. Even assuming that the ALJ erred in relying on Plaintiff's daily activities, any error is harmless because, as discussed *supra*, the ALJ offered sufficient additional reasons, supported by substantial evidence, for the ultimate adverse credibility finding. *See Carmickle v. Comm'r of Soc. Sec. Admin,* 533 F.3d 1155, 1162-63 (9th Cir. 2008).

1    **B.  Medical Opinion Evidence**

2           Plaintiff faults the ALJ for discrediting the medical opinions of Pamela

3    Vecchio, A.R.N.P.; John Arnold, Ph.D.; and W. Scott Mabee, Ph.D.  ECF No. 14

4    at 16-18.

5           There are three types of physicians: "(1) those who treat the claimant

6    (treating physicians); (2) those who examine but do not treat the claimant

7    (examining physicians); and (3) those who neither examine nor treat the claimant

8    but who review the claimant's file (nonexamining or reviewing physicians)."

9    *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

10   "Generally, a treating physician's opinion carries more weight than an examining

11   physician's, and an examining physician's opinion carries more weight than a

12   reviewing physician's."  *Id.*  "In addition, the regulations give more weight to

13   opinions that are explained than to those that are not, and to the opinions of

14   specialists concerning matters relating to their specialty over that of

15   nonspecialists."  *Id.* (citations omitted).

16          If a treating or examining physician's opinion is uncontradicted, an ALJ may

17   reject it only by offering "clear and convincing reasons that are supported by

18   substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

19   "However, the ALJ need not accept the opinion of any physician, including a

20   treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester* 81 F.3d at 830-31).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

### 1. Ms. Vecchio

In February 2010, Nurse Vecchio conducted an evaluation of Plaintiff and opined that Plaintiff's asthma severely limited his ability to work. Tr. 301-304. Ms. Vecchio observed that Plaintiff reported shortness of breath, but found that it

1   was not reasonable to expect the diagnosed medical condition to cause this

2   symptom.  Tr. 302.  She further explained that Plaintiff was resistant to trying other

3   treatments, Plaintiff had been referred to a pulmonologist, and opined that

4   pulmonology step up therapy would improve Plaintiff's employability.  Tr. 302-

5   304.  However, even without treatment, she indicated that the recommended

6   limitations would be limited to six months.  Tr. 304.  The ALJ gave Ms. Vecchio's

7   opinions no weight.  Tr. 24.

8         Because Ms. Vecchio is an "other source," the ALJ was required to identify

9   germane reasons for discounting her opinions.  *Molina*, 674 F.3d at 1108.  The

10  Court finds that the ALJ provided germane reasons for discounting Ms. Vecchio's

11  opinion.

12        First, the ALJ noted that "Nurse Vecchio is not an acceptable medical source

13  as that term is outlined at 20 CFR 416.913 and in Social Security Ruling 06-3p."

14  Tr. 24.  An ALJ may give less weight to an other source's opinion because it is not

15  from an "acceptable medical source;" SSR 06-3p, but it would be error to reject her

16  opinion *solely* on this basis.  However, the ALJ specifically noted her opinion

17  contradicted that of acceptable medical sources.  Tr. 24.  To the extent any error

18  occurred, it is harmless in this case because the ALJ gave additional sufficient

19  reasons for rejecting Ms. Vecchio's opinion.  *See Carmickle*, 533 F.3d at 1162-63.

20

1       Second, the ALJ found that "her opinion is not consistent with Dr. Belzer

2    and Dr. Bernardez-Fu." Tr. 24. Dr. Belzer, a pulmonary disease specialist, opined

3    that Plaintiff was able to walk on flat ground for an unlimited period, Tr. 38-40,

4    which conflicted with Ms. Vecchio's opinion in February 2010 that Plaintiff was

5    "severely limited," which is defined as "unable to stand and/or walk." Tr. 303.

6    Dr. Bernardez-Fu reviewed the Plaintiff's medical record and concluded that the

7    Plaintiff was not disabled despite having some exertional and postural limitations.

8    Tr. 84-96. Nurse Vecchio's opinion that the Plaintiff was severely limited by his

9    asthma is in tension with these opinions. Because the opinion of an acceptable

10    medical source is given more weight than that of an "other source," 20 C.F.R. §§

11    404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996), this was

12    a germane reason to reject her opinion.

13       Third, the ALJ found that Ms. Vecchio's opinion was not consistent "with

14    the objective medical evidence" in the record. Tr. 24. Specifically, Nurse

15    Vecchio's opinion that Plaintiff was severely limited in his ability to work

16    contradicted medical evidence that Plaintiff's breathing was normal at rest. Tr.

17    247. Pulmonary tests were consistent with mild obstructive airway disease. Tr.

18    255. An ALJ may discredit treating physicians' opinions that are conclusory, brief,

19    and unsupported by the record as a whole or by objective medical findings. *Batson*

20    *v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Fourth, the ALJ discounted Ms. Vecchio's opinion because it "is not consistent … even with her own opinion in September 2010." Tr. 24. A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. In September 2010, she reported that "she saw no evidence his asthma interfered with working," when just a few months earlier in February 2010, she had stated "he was capable of sedentary or light work." Tr. 24 (internal citations omitted). Contradictions in a recommendation provide "germane reasons" for rejecting an opinion from an "other source." SSR 06-03p, 2006 WL 2329939 at *2; *Molina*, 674 F.3d at 1111. Here, the ALJ provided germane reasons for rejecting Ms. Vecchio's opinion.

   *2. Dr. Arnold*

Dr. Arnold evaluated Plaintiff in July 2010 and again in April 2012. In 2010, Dr. Arnold concluded that Plaintiff suffered from symptoms with mild to moderate impact on his ability to perform work activities, however, he opined these would last 6-12 months with rehabilitation. Tr. 310-313. In 2012, Dr. Arnold evaluated Plaintiff, noted his prognosis was good, and opined that Plaintiff was able to remember locations and simple work like tasks; understand, remember and carryout simple verbal and written instructions; to concentrate and attend for short to moderate periods; would be able to ask simple questions, request

1  assistance and accept instructions; adhere to basic standards of neatness and

2  cleanliness, make plans on his own, and be aware of normal hazards and take

3  appropriate precautions.  Tr. 321.  Dr. Arnold further questioned the veracity of

4  Plaintiff's presentation.  Tr. 323.  Dr. Arnold noted that Plaintiff had "exaggerated

5  expressions and [he] over-reacted," that Plaintiff's responses were "vague," and

6  that he attempted "negative impression management."  Tr. 323.  The ALJ gave Dr.

7  Arnold's opinions regarding limitations assessed "limited weight."  Tr. 24.

8       Because Dr. Arnold's 2010 opinion was contradicted, the ALJ need only to

9  have given specific and legitimate reasoning supported by substantial evidence to

10  reject that opinion.  *Bayli*ss, 427 F.3d at 1216.  This Court finds that the ALJ

11  properly assigned Dr. Arnold's 2010 assessment of Plaintiff's work limitations

12  opinion minimal weight.

13       Plaintiff challenges the ALJ's consideration of Dr. Arnold's opinions,

14  contending that the ALJ "gave no weight to the mental limitations found by Dr.

15  Arnold in 2010, reasoning that in his 2012 evaluation, Dr. Arnold was concerned

16  about exaggeration."  ECF No. 14 at 17.  Plaintiff alleges that the ALJ considered

17  Dr. Arnold's 2012 evaluation to the detriment of his 2010 evaluation.  *Id.*

18       Here, contrary to Plaintiff's claims, the ALJ considered both Dr. Arnold's

19  2010 and 2012 evaluations, Tr. 19, 24, and noted the indicia of exaggeration for

20  both.  In reciting the medical findings, the ALJ noted that in his 2010 evaluation,

1  Dr. Arnold reported that Plaintiff's "PAI was deemed questionably valid, as there

2  were subtle suggestions he attempted to portray himself in a negative or

3  pathological manner in particular areas." Tr. 19.  In considering Dr. Arnold's 2012

4  report, the ALJ noted that "Dr. Arnold reported it appeared [the Plaintiff] was

5  attempting negative impression management." Tr. 19.  In sum, in both the 2010

6  and 2012 reports, Dr. Arnold questioned the Plaintiff's veracity and the ALJ noted

7  it in her findings.

8       First, the ALJ noted the contradictory and inconsistent nature of Dr.

9  Arnold's opinions. Tr. 24.  A medical opinion may be rejected by the ALJ if it is

10 conclusory, contains inconsistencies, or is inadequately supported.  *Bray*, 554 F.3d

11 at 1228; *Thomas*, 278 F.3d at 957; *see also Johnson v. Chater,* 87 F.3d 1015, 1018

12 (9th Cir. 1996) (Where a treating physician's opinion is itself inconsistent, it

13 should be accorded less deference).  The ALJ noted that Dr. Arnold "opined

14 [Plaintiff] had moderate limits in the ability to interact appropriately with

15 coworkers, supervisors, and in public contacts." Tr. 24.  The ALJ went on to

16 explain that Dr. Arnold also opined that Plaintiff was otherwise able to understand,

17 remember, and carry out simple and more complex instructions. Tr. 24.  However,

18 in the 2012 opinion, Dr. Arnold assessing limitations included the ability to

19 understand, remember, and carry out simple instructions only, with no social limits

20 whatsoever. Tr. 24.  The 2012 opinion essentially provided more substantial

limitations on Plaintiff's cognitive functioning, but less limitations on Plaintiff's social functioning, with no explanation for this inconsistency.  Moreover, in this second evaluation, "Dr. Arnold recommended TOMM testing to determine if the claimant was cognitively malingering, so limited weight can be given to his opinion on that exam."  Tr. 24 (internal quotation marks omitted).  The inconsistencies between the assessments, the lack of explanation for the inconsistencies and the identified concern regarding malingering were specific and legitimate reasons to discredit the opinions.

Second, Dr. Arnold indicated he expected the limitations assessed in 2010 to last 6 to 12 months, Tr. 24, and the limitations assessed in 2012 to last 6 months, Tr. 321.  Temporary limitations are not sufficient to meet the durational requirement for a finding of disability.  *See* 20 C.F.R. 416.905(a) (claimant must have impairment expected to last for a continuous period of not less than 12 months); 42 U.S.C. § 423(d)(1)(A); *Carmickle*, 533 F.3d at 1165 (affirming ALJ's finding that treating physicians' short term excuse from work was not indicative of "claimant's long term functioning.").  This was a specific and legitimate reason to reject the medical opinions.

### 3. Dr. Mabee

In September 2012, Dr. Mabee examined Plaintiff and opined that Plaintiff had some moderate restrictions on certain work functions, such as: memory

1   impairment, performing activities on a schedule, adapting to changes, making

2   decisions, communicating and performing effectively in a work setting, and

3   maintaining appropriate behavior for work.  Tr. 330.  Dr. Mabee further opined

4   that the Plaintiff would be impaired for 6-9 months with available treatment.  The

5   vocational expert testified that the Plaintiff would be unemployable with the

6   limitations Dr. Mabee found.  Tr. 18.

7          First, the ALJ noted that Dr. Mabee assessed moderate limitations in basic

8   work activity, but noted that the assessed limitations were limited to six to nine

9   months.  Tr. 24 (citing Tr. 331).  Temporary limitations are not sufficient to meet

10  the durational requirement for a finding of disability.  *See* 20 C.F.R. 416.905(a)

11  (claimant must have impairment expected to last for a continuous period of not less

12  than 12 months); 42 U.S.C. § 423(d)(1)(A); *Carmickle*, 533 F.3d at 1165

13  (affirming ALJ's finding that treating physicians' short term excuse from work was

14  not indicative of "claimant's long term functioning.").  In fact, the ALJ specifically

15  noted that several evaluators limited any limitations to less than 12 months.  Tr. 24.

16  This was a specific and legitimate reason to discredit Dr. Mabee's opinion.

17  Second, Dr. Mabee opined that with appropriate treatment and vocational training,

18  Plaintiff would be capable of working.  Tr. 24.  Thus, Dr. Mabee's opinion does

19  not support Plaintiff's contention he is unable to work.  The ALJ did not err in

20  assigning Dr. Mabee's opinion little weight.

1

**CONCLUSION**

2

After review, the Court finds that the ALJ's decision is supported by

3

substantial evidence and free of harmful legal error.

4

**IT IS ORDERED:**

5

1.  Plaintiff's motion for summary judgment (ECF No. 14) is **DENIED.**

6

2.  Defendant's motion for summary judgment (ECF No. 19) is **GRANTED.**

7

The District Court Executive is directed to file this Order, enter

8

**JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE**

9

THE FILE.

10

DATED this 23rd day of September, 2016.

11

<u>*S/Mary K. Dimke*</u>
MARY K. DIMKE

12

UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20